FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 23 2014

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **KEN JOSEPH** Plaintiff, v. **McCURDY & CANDLER, LLC;** **And U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE** Defendants, | )<br>)<br>)   **Case No.: 1:13-CV-04122-JEC-RGV**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S RESPONSE AND BRIEF TO DEFENDANTS' MOTION TO DISMISS

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW the Plaintiff, KEN JOSEPH ("PLAINTIFF"), who hereby submits his Response to the Defendants' MCCURDY & CANDLER, LLC and US BANK NATIONAL ASSOCIATION AS TRUSTEE'S motion to dismiss and states as follows:

## I. STATEMENT OF FACTS

1. Pending before the court is an action for damages brought against the Defendants MCCURDY & CANDLER, LLC ("MCCURDY & CANDLER") AND U.S. BANK NATIONAL ASSOCIATION ("US BANK") for damages

for violations of the Truth in Lending Act (TILA) 15 U.S.C. §1641 *et seq.*;
Damages for violations of the Fair Debt Collection Practices Act (FDCPA) 15
U.S.C. §1692 *et seq.*; and for declaratory and injunctive relief.

2. On the December 13th, 2013, PLAINTIFF, proceeding *pro se*, filed a civil
   action against Defendants Nationstar Mortgage, LLC, MCCURDY &
   CANDLER, and U.S. BANK NATIONAL ASSOCAIATION as Trustee.
   Plaintiff was ordered to amend his complaint to address deficiencies noted in
   the Order. After Plaintiff filed his amended complaint, he was allowed to
   proceed with his TILA claim asserted against US BANK and his FDCPA
   claim asserted against MCCURDY & CANDLER.

3. PLAINTIFF contends that Defendants have conspired and committed fraud in
   order to wrongfully foreclose with total disregard for Federal and State laws.

4. PLAINTIFF contends that Defendants have created and caused fraudulent
   documents to be filed into the public records of Gwinnett County and into the
   State Court giving the appearance that there is a legal foreclosure going on
   while some or all of the Defendants continue to break the law.

5. PLAINTIFF is a borrower who purportedly defaulted in repayment of his
   mortgage loan, resulting in US BANK initiating foreclosure proceedings on the
   real property which served as a collateral for the loan and US BANK

purportedly derived its interest from an August 05, 2009 Security Deed executed in favor of by warranty deed.

6. The records show the assignor was MERS, as nominee for Bayrock Mortgage Corporation, who soon after become defunct on or about August, 2010.

7. Prior to the assignment of the Security Deed, Plaintiff fell behind on his payment with Wilshire Credit Corporation (whom is not a party to this lawsuit) and received a notice about past payment due of $1876.88 as of December 2010.

8. Shortly after PLAINTIFF lost his full time job and fell behind on his payment. It is unclear of the exact date in 2007 when Plaintiff actually defaulted on the loan.

9. On May 13, 2014, US BANK, through their Attorneys filed a MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND FIRST AMENDED COMPLAINT.

10. On May 28, 2014, MCCURDY & CANDLER also filed a MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND FIRST AMENDED COMPLAINT.

## II. STANDARD OF REVIEW

11. In determining whether a complaint states a claim upon which relief can be granted, courts accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Hill v. White, 321 F.3d 1334, 1335 (11ᵗʰ Cir. 2003)*.

12. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). "[A] Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Id. At 555. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. At 570.

13. A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

14. The complaint must only include "sufficient factual allegations to provide the grounds on which the claim rests". *Friends of Lake View School District v. Beebe*, 578 F.3d 753, 762 (8th Cir. 2009). While "mere labels and conclusions" will not satisfy a plaintiff's burden, there is no need for detailed factual allegation or specific facts that describe the evidence to be presented. *Id.* A plaintiff satisfies their burden if they allege facts sufficient to allow a court to infer "more than the mere possibility of misconduct". *Ashcroft v. Iqbql*, 129 W.Ct. 1937, 1950 (2009).

15. Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

16. "When considering Defendant's motion, the court must construe the factual allegations in the complaint in the light most favorable to the plaintiff." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Sir. 1996): Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir. 1996). "Only if no possible construction of the alleged facts will entitle plaintiff to relief should the court grant defendant's motion." Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S. Ct.

2229, 2232 (1984). If the factual allegations in plaintiff's complaint support any legal theory that entitles plaintiff to some relief, the court should overrule defendant's motion to dismiss.

17. Furthermore, providing too much in the complaint or amended complaint may also be fatal to a plaintiff. Dismissal may not be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. See weisbuch v. County of L.A., 119 F.3d 778, n.1 (9th Cir. 1997) (stating  that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if deposition and other….evidence on summary judgment establishes the identical facts.")

18. "A complaint must state a plausible claim for relief, and 'a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Sinaltraninal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949 (2009)) (alteration omitted). We also review de novo matters of statutory interpretation. Belanger, 556 F.3d at 1155.

19. A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." Harris v. Amgen, Inc.,

573 F.3d 728, 737 (9th Cir. 2009) (issued two months after Iqbal). The Ninth

Circuit has held that "in dismissals for failure to state a claim, a district court

should grant leave to amend even if no request to amend the pleading was

made, unless it determines that the pleading could not possibly be cured by the

allegation of other facts." Cook, Perkiss and Liehe, Inc. v. Northern California

Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990). The issue is not

whether the plaintiff will prevail but whether he "is entitled to offer evidence

to support the claims." Diaz v. Int'l Longshore and Warehouse Union, Local

13, 474 F.3d 1202, 1205 (9th Cir. 2008) (citations omitted).

20. The Defendant MCCURDY & CANDLER stated in his motion to dismiss

that PLAINTIFF'S assertion that "MCCURDY & CANDLER is a debt

collector is a bald statement."

21. However, PLAINTIFF received a letter from MCCURDY & CANDLER

stating that "THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR AND

IS ATTEMPTING TO COLLECT DEBT. ANY INFORMATION

OBTAINED WILL BE USED FOR THAT PURPOSE."

22. This letter, which dated November 20, 2013, further states that "Nationstar

Mortgage, LLC acts as the mortgage loan servicer for the investor that owns

your loan. (That investor to date have not been identify)  The investor has authorized Nationstar Mortgage, LLC to provide this information and to act on its behalf.

23. A demand for payoff was offered of the amount of $326,670 to MCCURDY & CANDLER, LLC to be sent to their office.

24. Plaintiff demanded an explanation for the payoff amount, whom entitled to that payoff? How this the investors/ owner(s) arrived to that amount? Only a partial list of junk fees and misc posting were sent to PLAINTIFF, which did not explain any of questions asked.

25. Clearly, if MCCURDY & CANDLER was not a debt collector, they were acting as one.  Furthermore, not identifying who the Investor(s) are for whom MCCURDY  & CANDLER is demanding payment for, is consider as tortuous interference.

26. PLAINTIFF further alleged that MCCURDY & CANDLER has misrepresent the amount and character of the debt.

27. Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, which includes "[t]he use of any false representation

or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," id. § 1692e(10).

28. MCCURDY & CANDLER was not collecting his own debt when they claim that they were acting as a debt collector. Therefore, MCCURDY & CANDLER is not a creditor. The statute defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." Id. § 1692a(4). And "[t]he FDCPA provides that 'any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person' for [actual and statutory] damages and costs." Bourff v. Lublin, __ F.3d __, slip op. at 6, No. 10-14618 (11th Cir. Mar. 15, 2012) (quoting 15 U.S.C. § 1692k(a)).

29. Federal debt collection laws not only regulate the collection conduct of traditional collection agencies but attorneys and, in some circumstances, loan servicers. In the name of thin profit margins, the current mortgage foreclosure crisis has pushed many loan servicers and bank attorneys to the limits of these consumer protection laws. Those found to have violated debt collection laws

may be liable to the borrower for $1,000.00 in statutory damages as well as actual damages including attorneys' fees and costs.

30. Loan servicers, their customer service representatives, loan modification agents, foreclosure lawyers and their staff have all been accused of heavy handed abusive and misleading debt collection tactics. What recourse do victimized borrowers have under federal law?

31. The vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." These finding may be particularly true when the debt sought to be collected is based on a residential home loan. The Act regulates the conduct of "debt collectors" in collecting "debts" owed or allegedly owed by "consumers." It is designed to protect consumers from unscrupulous debt collectors, whether or not there is a valid debt.

32. The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct the natural consequence of which is to harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information with regard to their rights as a consumer.

33. A single violation is sufficient to support judgment for the consumer.

34. "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." **Residential mortgage loans are, when in default, covered by this definition.**

35. Liability under the FDCPA for mortgage servicers initially turns on whether or not the entity attempting to collect the debt is a "debt collector" as defined by the Act. The answer to this inquiry depends on when the mortgage servicer acquires the loan as the Act includes an exemption to the new servicer.

36. The FDCPA includes a rather lengthy list of all those who are not "debt collectors". The Act specifically states that the term does not include a "debt which was originated by such person; [or] concerns a debt which was not in default at the time it was obtained by such person".

37. Because the FDCPA does not apply to a creditor collecting its own debt, to understand the extent of this exclusion, the above language must be read together with the Act's definition of "creditor" found in 15 U.S.C. §1692(a)(4). A "creditor" is "any person who offers or extends credit creating a debt or to

whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . The term does not include– (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor; . . . [and] (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." Read together and as confirmed in the Act's legislative history, Congress' intent is clear, the exemption is intended to include "mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing."

38. This scenario is often the case when an assignment is made from one servicer to another. Thus, for FDCPA purposes, the distinction between a "loan servicer" and a "debt collector" depends on whether the loan was in "default" at the time it was obtained.

39. Plaintiff became in default on or about December, 2007 and according to the records that was entered by MCCURDY & CANDLER, LLC as evidence.

40. The term "**default**" raises a number of issues. The Federal Trade Commission ("FTC") (which is charged under the Act with regulatory enforcement and oversight) made clear in its often cited DeMayo opinion that the word "**default**" was to be defined by examining first, the underlying contract; followed by the applicable state or federal law; and finally the creditor's reasonable written guidelines. The standard residential loan note for Fannie Mae and Freddie Mac (who together hold or guarantee over $5.4 trillion of mortgages, about half of the nation's home loans ) defines a loan as being in default if not paid on the due date (i.e., first of the month).

41. Under this dynamic, when determining a borrower's rights under the FDCPA, it should first be determined when the loan came into to default and when the assignment to the loan servicer was made.

42. In the current environment of loan securitization, this is often a complicated task, sometimes without out any clear answer.  However, a trip to the county clerk to examine the chain of title may help the PLAINTIFF clarify things.

43. If the borrower is already in foreclosure in this case, this analysis is even more vital. It is often the case that assignments are made from one servicer to another weeks and even days before the foreclosure is filed.

44. While the loan servicer may not be subject to FDCPA liability, their attorneys are. Originally excluded from the definition of "debt collector", in 1986, Congress removed the attorney exemption. The legislative history of the amendment concludes that attorneys were suffering from the same infirmities as their collection agencies colleagues. Their collection activities were not being effectively monitored and so the removal of the exemption was necessary to "put a stop to the abusive and harassing tactics of attorney debt collectors."

45. In its seminal case of Heintz v. Jenkins, the United States Supreme Court held that litigation conduct of attorneys in collecting consumer debts is not exempt from the FDCPA. Foreclosure attorneys are generally subject to the FDCPA to the extent they attempt to collect money or enforce personal liability.

46. However, in non-judicial jurisdictions where foreclosures are performed out of court by trustees for the bank, FDCPA liability has been elusive. The non-judicial jurisdiction circuits are split on this issue, some holding that the trustees are debt collectors and others holding that they are not. Distinctions

are often made based upon the activities of the trustee. Is the trustee simply enforcing a security interest or collecting a debt?

### III. **The FDCPA does encompass an attorney performing a foreclosure.**

47. The Fourth Circuit in Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373 (4thCirc. 2006) clarified that a foreclosure firm is attempting to collect a debt, even though the foreclosure file was in rem and they were attempting to foreclose on a deed of trust.The debtor filed suit against the law firm that had filed the foreclosure action alleging several violations of the FDCPA. Specifically the debtor alleged that the law firm failed to verify the debt, even though she had requested verification in writing; the law firm continued its collection efforts even though the debt had been contested and that the firm communicated with the debtor even though she was represented by counsel. Id. at 375.

48. The law firm filed a motion to dismiss arguing that it was not acting in connection with a "debt" and that it was not a "debt collector" with in the definition of the statute. Id. Specifically, the law firm argued that it was a substitute trustee for a deed of trust and that it was acting at the trustee, therefore, it was not a "debt collector". However, the Fourth Circuit ruled that the law firm was attempting to collect a debt and that it did fall under the

definition of a debt collector. Specifically, the Court stated that "[s]ince a foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt, those who engage in such foreclosures are included within the definition of debt collectors if they otherwise fit the statutory definition." Id. at 379, *citing* Shapiro & Meinhold v. Zartman, 823 P.2d 120 (Colo. 1992). Further, the Court stated that while not every law firm filing foreclosure actions may fall under the FDCPA, it is well-established that the Act applies to Lawyers "who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Id. at 379, *citing* Heintz v. Jenkins, 514 U.S. 291, 115 S.Ct. 1489 (1995).

49. While this decision simply clarifies a split within the Fourth Circuit, it is the overwhelmingly majority view throughout the Circuits and it is the most recent decision to discuss how a law firm performing foreclosures should consider itself to be a debt collector.

## IV. COMMUNICATION WITH THE DEBTOR

50. The initial communication with the debtor must include a notice that it is from a debt collector attempting to collect a debt. Generally, this warning, or "mini-Miranda" is listed at the beginning of any letter demanding the debt, any pleading that is sent, and any other document that is mailed to the debtor. It

must be placed conspicuously on the document and be written in such a way so

as the "least sophisticated consumer" would understand it. It also must state

that they are entitled to dispute the debt and that they must do so in writing

within thirty (30) days of receipt of the document. Normally, the mini-Miranda

will state the following:

> **THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. UNLESS YOU, WITHIN 30 DAYS AFTER RECEIPT OF THIS DOCUMENT, DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, THIS FIRM WILL ASSUME THAT THE DEBT IS VALID. IF YOU NOTIFY ME IN WRITING WITHIN THE ABOVE 30 DAY PERIOD, THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, I WILL OBTAIN VERIFICATION OF THE DEBT AND A COPY OF SUCH VERIFICATION WILL BE MAILED TO YOU BY THIS FIRM. IF YOU SO REQUEST WITHIN THE ABOVE 30 DAY PERIOD, THIS FIRM WILL INFORM YOU OF THE IDENTITY OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.**

51. Any subsequent communication with the debtor should also include a

statement to the effect that "This Communication is from a Debt Collector" or

"This Communication is from a Debt Collector and any information you

provide can be used for the purpose of collecting that debt." This is provided

mainly because the debt collector does not know when and if the consumer has

received the prior communication. So it is always better to play it safe.

## V. **THE FDCPA IMPOSES A STRICT LIABILITY STANDARD**

52. The FDCPA, 15 U.S.C. § 1692, et seq., is a strict liability statute, Taylor v.

Perrin, Landry deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997): see also

Irwin v. Mascott, 112 F. Supp. 2d 937 (N.D. Cal. 2000): Pittman v. J.J. Mac

Intyre Co. of Nevada, Inc., 969 F. Supp. 609 (D. Nev. 1997). "Because the Act

imposes strict liability, a consumer need not show intentional conduct by the

debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F. 3d

30, 33-34 (2nd Cir. 1996).

53. The FDCPA is a remedial statute.  Hamilton v. United Healthcare of

Louisiana, Inc., 310 F. 3d 385, 392 (5th Cir. 2002). The remedial nature of the

FDCPA requires that courts interpret it liberally. Clark v. Capital Credit &

Collection Services, Inc., 460 F. 3d 1162, 1176 (9th Cir. 2006). "Because the

FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., is a

remedial statute, it should be construed liberally in favor of the consumer."

Johnson v. Riddle, 305 F. 3d 1107, 1117 (20th Cir. 2002).

## VI. **DEENDANTS FALSELY IDENTIFIED U.S. BANK AS THE CREDITOR/ OWNER**

54. On or about November 15, 2013, Plaintiff receive a letter Titled "NOTICE

PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C.

1692 INITIAL COMMUNICATION LETTER" in the mail address from
Defendant McCurdy & Candler, LLC.

55. The notice was dated November 12, 2013 stated that "This law firm represents
U.S. Bank, National Association, as Trustee for The Holders of The Specialty
Underwriting and Residential Finance Trust, Mortgage Loan Asset-Backed
Certificates, Series 2007-AB1." The letter was not signed by anyone.

56. This letter falsely identified "U.S. Bank, National Association, as Trustee for
The Holders of The Specialty Underwriting and Residential Finance Trust,
Mortgage Loan Asset-Backed Certificates, Series 2007-AB1." As the Creditor.

57. Plaintiff was mislead thinking he can negotiate a principal reduction with the
secure creditor whom he believe to be US BANK.

58. US BANK is not a creditor under the FDCPA.

59. MCCURDY & CANDLER, LLC violated the FDCPA's "prohibition on
false, deceptive or misleading representations by falsely stating in its collection
notice that US BANK was the 'creditor' of the PLAINTIFF'S loan.

60. Defendant U.S. BANK, whom McCURDY & CANDLER is claiming to be
the Secure Creditor/ Owner of the note, has said in a letter dated October 7th,
2013 responding to the Plaintiff' request to settle any and all debt owe (**see
attached exhibit "A"**) and said:

   a. **U.S. BANK is merely the trustee for the Trust that owns your
      mortgage and note.**
   b. **The Trust is the owner of the mortgage and note.**
   c. **Please note that the Trust is the owner of your mortgage and note,
      not the trustee.**
   d. **It is the servicer who has taken all action regarding your
      property.**

61.  What PLAINTIFF found as the basis of the foreclosure are loan documents

     that were paid in full. In cash and none of the parties on the initial originals

     retained any beneficial ownership interest at all.

62.  Such deceptive processes violate state and Attorney Generals have requested

     suspension of questionable foreclosures and investigation into the underlying

     cases in which judges and courts throughout the country have not yet

     confirmed:

        a.  That all foreclosure-related documents were lawfully signed,

        b.  That the chain of ownership is clear and has been revealed in full

        c.  That state consumer protection requirements have been followed and

            have been processed according to state law.

63.  Georgia state Attorney General (AG) Sam Olens joined a $25 billion

     Federal-Atate Settlement with Nation's Five Largest, Mortgage Servicers.[1]

---

[1] http://law.ga.gov/press-releases/2012-02-09/attorney-general-sam-olens-joins-25-billion-federal-state-
settlement

64. **First ever nationwide reforms to servicing standards.** These servicing standards require a single point of contact for borrowers' ease in communicating with servicers, adequate staffing levels and training, better communication with borrowers, appropriate standards for executing documents in foreclosure cases, and ending improper fees. Specifically:

   a. Borrowers must be thoroughly evaluated for all available loss mitigation options before foreclosure referral, and banks must act on loss mitigation applications before referring loans to foreclosure; i.e. "dual tracking" will be restricted.

   b. Borrowers must be sent a pre-foreclosure notice that will include a summary of loss mitigation options offered, an account summary, description of facts supporting lender's right to foreclose, and a notice that the borrower may request a copy of the loan note and the identity of the investor holding the loan.

   c. Information in foreclosure affidavits must be personally reviewed and based on competent evidence.

   d. Holders of loans and their legal standing to foreclose must be documented and disclosed to borrowers.

e. Servicers are required to expedite and facilitate short sales of distressed properties.

65. One of the mortgage servicers which have joined the settlement is Bank of America Home Loan (a none party to this lawsuit) who has admitted to have sent incorrect account information and claimed to have corrected it on a letter sent on January 17, 2011.

66. On February 22, 2008 Wilshire Credit Corporation claimed to have corrected Erroneous information which was being reported to PLAINTIFF'S consumer credit report. However, there are no evidence before the court to prove that these corrections were made and that MCCURDY & CANDLER is not misrepresenting the amount and the character of the debt.

67. PLAINTIFF is unsure what role MCCURDY & CANDLER played in the attempt to foreclose.

68. PLAINTIFF is unsure who MCCURDY represent at this time.

69. PLAINTIFF'S research and information also indicated that his loan did not make it in the trust by the closing date and also report to the SEC ended in January, 2008.

## VII. <u>US BANK MOTION TO DISMISS- TILA CLAIM is time barred</u>

70. US BANK has moved the court to dismiss PLAINTIFF'S TILA claim and assert that PLAINTIFF did not alleged the date of transfer of the mortgage loan at issue to US BANK.

71. US BANK states that "Public records show, however, that the mortgage loan at issue was transferred to US BANK on August 5, 2009.

72. PLAINTIFF filed a notary complaint on July 19, 2012 after he inspects the public record and realizes the assignment to US BANK was fraudulently recorded.  US BANK was copied on this communication **See exhibit"B"**

73. The assignment which is recorded on August 5th 2009 at the Clerk Superior Court Gwinnett County, GA with a loan #4535088 (Differs from Note and Security Deed) read  record and return: MCCURDY & CANDLER, LLC, attn: GA Foreclosure Department, 250 E Ponce De Leon Avenue Suite 600, Decatur, GA 30030.

74. The PLAINTIFF requested that the Secretary of State of the State of Oregon and the Attorney General of the State of Oregon investigate the possible notary violation and possible criminal actions of Oregon Notary Public **Shelby Tisdale**, Commission No. 409809.

75. Plaintiff asserts that the document was false and/or forged and has been unlawfully filed into a public office in the State of Georgia, Gwinnett County in violation of Georgia and Oregon Codes.

76. Melissa Tomlin, Assistant signed as assistant secretary. Lori Umberger, signed as the first witness. Justin Burns signed as the second witness.

77. A search for Melisa Tomlin turns up a number of recorded documents of title where Ms. Tomlin appears in alternate employment position, further adding to my conclusion that this assignment is invalid and cannot be submitted as evidence in the court.

78. On July 9th, 2012, less than a month after the notary complaint was filed, a corrective assignment of security deed was filed. It states that the reason for the corrective of assignment was to correct the name of the Assignee. The words "for the holder of" were added. However, the **robo-signer's** names were removed and also a fake address of US BANK was added which was the address of PLAINTIFF'S previous servicer's address.

79. The correction assignment stated that "**U.S. Bank, National Association, as Trustee for The Specialty Underwriting and Residential Finance Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-AB1** (hereinafter

referred to as "Assignee") whose address is 7105 Corporate Drive Plano, TX 75024.

80. A short Google of this address revealed that this address belong to BANK OF AMERICA, a previous servicer of the PLAINTIFF.

81. PLAINTIFF'S research and information has indicated that the sworn SEC filings for SURF 2007-AB1 trust clearly delineate where the current most recent properly endorsed and assigned Note and Deed of Trust originals are attested to be held. Yet no mention of this fact is found on this record.

82. It appears that the previous loan servicer BAC Home Loans Servicing ("BAC") wholly owned subsidiary of Bank of America has created a delivery receipt mechanism whereby correspondence by an for SURF 2007-AB1 was being sent and respondent to by BAC and their representative; not those of SURF 2007-AB1.

83. These assignments are false and PLAINTIFF will have to depose the parties involved in order to factually state the correct date in which the proper assignment was properly filed, if any proper assignment was filed at all.

84. PLAINTIFF alleged that the DEFENDANT'S have filed false and fraudulent information in the court in attempt to foreclose on PLAINTIFF'S property.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order denying Defendants' Motion to Dismiss for lack of proof of transfer of ownership and for the reasons stated above.  In the alternative, if the Court determines Plaintiff has failed to state a claim, Plaintiff asks the Court to grant leave to amend his Complaint.

Dated: June 20th, 2014

Respectfully submitted,

Ken Joseph
596 Middleton Place,
Grayson, GA 30017
443-831-8884
Sem252525@aol.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the document above will be sent by first class mail USPS to counsel of record listed below for Defendants.

McCurdy & Candler, LLC
Six Piedmont Center, Suite 700
3525 Piedmont Road, NE
Atlanta, GA 30305

U.S. BANK NATIONAL ASSOCIATION
c/o
BALCH & BINGHAM, LLP
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, GA 30308
Telephone: (404) 261-6020

Dated:  June 20, 2014

Ken Joseph
596 Middleton Place
Grayson, GA 30017
Phone: 443-831-8884
Email: sem252525@aol.com



EXHIBIT "A"



All of **us** serving you.

EP-MN-WS3D
60 Livingston Avenue
St. Paul, MN 55107

October 7, 2013

Mr. Ken & Ms. Glenda Joseph
596 Middleton Place
Grayson, GA 30017

Re:     596 Middleton Place, Grayson, GA  30017

Dear Mr. & Ms. Joseph:

I am writing in response to your letter dated September 27, 2013 that was sent to U.S. Bank.  On behalf of U.S. Bank, I am happy to assist you with this matter to the extent I am able to provide information.  I have researched your mortgage and have determined that U.S. Bank is merely the trustee for the Trust that owns your mortgage and note.  Please note the Trust is the owner of your mortgage and note, not the trustee.  The servicer is the party to the Trust that has the authority and responsibility to make decisions regarding loan modifications or settlement offers for individual mortgage loans in the Trust.  The trustee has no authority or responsibility to review and or approve or disapprove of these decisions.  It is the servicer who has taken all action regarding your property, and has the information you have requested.

In order to address your concerns, you must work with Nationstar, as the servicer for your property.  I forwarded your correspondence to Nationstar, and they responded and assigned Ms. Kimberly Brinkley as their representative with whom you can discuss your specific concerns.  You can contact Ms. Brinkley directly via telephone at (ph: 9728941598) or via email at kimberly.brinkley@nationstarmail.com.

While U.S. Bank understands and wishes to assist you with this matter, the servicer is the only party with the authority and responsibility to make decisions regarding your mortgage and they are not affiliated with U.S. Bank in any way.  The trustee does not mediate between the servicer and the investor.  I have included a brochure that further explains the roles of the servicer and trustee that I hope you find helpful.

Please work with Nationstar to address your concerns.  Please directly contact the Nationstar representative that has been provided to you in this letter, so they can assist you in a more timely and efficient manner.

Sincerely,

Michael D. Bengtson
Corporate Trust Services
60 Livingston Ave
St Paul, MN 55107
michael.bengtson@usbank.com

EXHIBIT "B"

Certified mail receipt# 7010 3090 0003 5729 4558

Ken Joseph                                                          July 19, 2012
596 Middleton Place
Grayson, GA 30017
443-270-2222
sem252525@aol.com

Oregon Secretary Of State                    Oregon Attorney General
Kate Brown                                   John Kroger
Notary Division                              Oregon Department of Justice
Notary Public Complaint Specialist           Criminal Investigation Division
255 Capital St. NE Suite 151                 1162 Court Street NE
Salem, OR 97310-1327                         Salem, OR 97301-4096

RE: Notary Public Complaint

Dear Notary Specialist,

        Pursuant to Oregon Notary Law ORS 192.001 and others, I am formally requesting the Secretary of State
of the State of Oregon and the Attorney General of the State of Oregon investigate the possible notary violations
and possible criminal actions of Oregon Notary Public Shelby Tisdale, Commission No.409809

        I believe that the attached documents are false and/or forged and have been unlawfully filed into a public
office in the State of Georgia, Gwinnett county in violation of Georgia and Oregon Codes (O.C.G.A. § 45-17,
O.C.G.A. § 44-2, O.C.G.A. § 44-14, C.R.S. § 12-55 and others)

        I also believe Oregon Notary Public Shelby Tisdale is in fact a "robo-signer" assisting banks in
committing felonious acts of filing false and/or forged documents into a public office in the State of Georgia,
Gwinnett county in violation of Georgia and Oregon Codes (O.C.G.A. § 45-17, O.C.G.A. § 44-2, O.C.G.A. § 44-
14, C.R.S. § 12-55 and others)

        I also believe Oregon Notary Public Shelby Tisdale has committed Notary Fraud and other felonious acts
against myself, Ken Joseph; The State of Georgia, The County of Gwinnett and possibly others; and is attempting
to conceal his criminal acts by withholding his record book, which would prove conclusively that Oregon Notary
Public Shelby Tisdale has violated his oath of office, and is assisting the banks as a "robo-signer."

        I therefore request your office to investigate the actions of Oregon Notary Public Shelby Tisdale and
determine a finding of fact and conclusion of law concerning the aforementioned facts.  Accordingly, if your
office agrees that Oregon Notary Public Shelby Tisdale has violated any of the Notary laws of Oregon, or others, I
request the appropriate actions be taken against Oregon Notary Public Shelby Tisdale and that I be informed of all
actions pursuant to the Constitution and the Bill of Rights.

        I am formally notifying your office of Oregon Notary Public Shelby Tisdale possible felonious acts in
accordance with Title 18 USC § 4 – Misprision of Felony.

        Please order Oregon Notary Public Shelby Tisdale respond to this request pursuant to ORS 192.240 and
others.
        Please order Oregon Notary Public Shelby Tisdale produce a copy of his journal pursuant to ORS
194.005 and 194.152.

        In closing, I would like this office to consider the fact that Oregon Notary Public Shelby Tisdale possible
criminal acts are being committed using a government issued authority; and under color of state law to deprive me
of my constitutionally protected civil rights; and are the sole cause and relevant factors that have allowed a bank
to commence an unlawful foreclosure on my real property.

                                                                                    1

Certified mail receipt# 7010 3090 0003 5729 4558

Sincerely,

Ken Joseph,
All Rights Reserved,
*without prejudice*

CC: US Bank National Association as trustee
    Bank of America

2