IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 0 8 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

)
)
)
)                    Case No.: 1:13-CV-04122-JEC-RGV
**KEN JOSEPH**              )
    Plaintiff,       )
v.                   )
)
**McCURDY & CANDLER, LLC;**    )
**And U.S. BANK NATIONAL**     )
**ASSOCIATION, AS TRUSTEE**    )
    Defendants,    )

## OBJECTION TO MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

COME NOW Plaintiff, Ken Joseph ("Plaintiff"), to file in this court of record

pursuant to Fed.R.Civ.P. Rule 72; LR72.1, NDGa., Fed.R.Civ.P. 6(d), his

OBJECTION TO MAGISTRATE JUDGE'S FINAL REPORT,

RECOMMENDATION, AND ORDER pursuant to the following facts and

reasons:

### I.   STATEMENT OF FACTS

1. Pending before the court is an action for damages brought against the

   Defendants MCCURDY & CANDLER, LLC ("MCCURDY & CANDLER")

AND U.S. BANK NATIONAL ASSOCIATION ("US BANK") for damages for violations of the Truth in Lending Act (TILA) 15 U.S.C. §1641 *et seq*.; Damages for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq*.; and for declaratory and injunctive relief.

2. On the December 13th, 2013, PLAINTIFF, proceeding *pro se*, filed a civil action against Defendants Nationstar Mortgage, LLC, MCCURDY & CANDLER, and U.S. BANK NATIONAL ASSOCAIATION as Trustee. Plaintiff was ordered by the Court to amend his complaint to address deficiencies noted in the Order.  After Plaintiff filed his amended complaint, he was allowed to proceed with his TILA claim asserted against US BANK and his FDCPA claim asserted against MCCURDY & CANDLER.

3. PLAINTIFF contends that Defendants have conspired and committed fraud in order to wrongfully foreclose with total disregard for Federal and State laws.

4. PLAINTIFF contends that Defendants have created and caused fraudulent documents to be filed into the public records of Gwinnett County and into the State Court giving the appearance that there is a legal foreclosure going on while some or all of the Defendants continue to break the law.

5. PLAINTIFF is a borrower who purportedly defaulted in repayment of his mortgage loan, resulting in US BANK initiating foreclosure proceedings on the real property which served as a collateral for the loan and US BANK purportedly derived its interest from an August 05, 2009 Security Deed executed in favor of by warranty deed.

6. The records show the assignor was MERS, as nominee for Bayrock Mortgage Corporation, who soon after become defunct on or about August, 2010.

7. Prior to the assignment of the Security Deed, Plaintiff fell behind on his payment with Wilshire Credit Corporation (whom is not a party to this lawsuit) and received a notice about past payment due of $1876.88 as of December 2010.

8. Shortly after PLAINTIFF lost his full time job and fell behind on his payment. It is unclear of the exact month in 2007 when Plaintiff actually defaulted on the loan.

9. On May 28, 2014, MCCURDY & CANDLER filed a MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND FIRST AMENDED COMPLAINT, which the Court found to be premature.

.

10. On August 11, 2014, MCCURDY & CANDLER through his Attorney filed a RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND FIRST AMENDED COMPLAINT.

11. The Defendants then filed motion to dismiss Plaintiff's amended complaint, which plaintiff opposes.

12. On the 18th of September, Plaintiff's contest that the magistrate Judge erred in several of his decision with one being denying Plaintiff's request for leave to amend his complaint in his final report and recommendation order. The magistrate judge also erred in finding that U.S. Bank is the owner of Plaintiff's note and mortgage.

## II. <u>STANDARD OF REVIEW</u>

13. In determining whether a complaint states a claim upon which relief can be granted, courts accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).*

14. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

(2007), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). "[A] Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Id. At 555. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. At 570.

15. A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

16. The complaint must only include "sufficient factual allegations to provide the grounds on which the claim rests". *Friends of Lake View School District v. Beebe*, 578 F.3d 753, 762 (8th Cir. 2009). While "mere labels and conclusions" will not satisfy a plaintiff's burden, there is no need for detailed factual allegation or specific facts that describe the evidence to be presented. *Id.* A plaintiff satisfies their burden if they allege facts sufficient to allow a court to infer "more than the mere possibility of misconduct". *Ashcroft v. Iqbql*, 129 W.Ct. 1937, 1950 (2009).

17. Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

18. Furthermore, providing too much in the complaint or amended complaint may also be fatal to a plaintiff. Dismissal may not be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. See weisbuch v. County of L.A., 119 F.3d 778, n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if deposition and other....evidence on summary judgment establishes the identical facts.")

19. "A complaint must state a plausible claim for relief, and 'a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Sinaltraninal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949 (2009))

(alteration omitted). We also review de novo matters of statutory interpretation. Belanger, 556 F.3d at 1155.

### III. Discussion

### A. Defendants' Motions to Dismiss, [Docs. 23 & 27]

20. Defendants move to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Docs. 23 & 27][1]

21. A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment.[2]

22." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (issued two months after Iqbal). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no

---

[1] A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is Kaiser Aluminum rarely granted." & Chem. Sales v. Avondale The complaint must be Shipyards, 677 F.2d 1045, 1050 (5th Cir.1982). liberally construed in favor of the plaintiff, and all facts pleaded in Campbell v. Wells Fargo Bank, 781 the complaint must be taken as true. The district court may not dismiss a F.2d 440, 442 (5th Cir.1986). complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. entitle him to relief." This strict standard of review under rule 99, 2 L.Ed.2d 80 (1957). 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 Charles A. Wright & Arthur R. Miller, Federal Practice 1357, at 601 (1969). and Procedure §.

2 In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Sir. 1996): Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir. 1996). "Only if no possible construction of the alleged facts will entitle plaintiff to relief should the court grant defendant's motion." Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). If the factual allegations in plaintiff's complaint support any legal theory that entitles plaintiff to some relief, the court should overrule defendant's motion to dismiss.

request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts." Cook,

Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc., 911 F.2d

242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail

but whether he "is entitled to offer evidence to support the claims." Diaz v.

Int'l Longshore and Warehouse Union, Local 13, 474 F.3d 1202, 1205 (9th

Cir. 2008) (citations omitted).

23. Plaintiff alleges that U.S. Bank violated 15 U.S.C. § 1641(g) of TILA. [Doc.

4 at 14-15 ¶¶ 57-58]. Section 1641(g) provides in relevant part:

> [N]ot later than 30 days after the date on which a mortgage loan is sold or
> otherwise transferred or assigned to a third party, the creditor that is the new
> owner or assignee of the debt shall notify the borrower in writing of such
> transfer, including–(A) the identity, address, telephone number of the new
> creditor; (B) the date of transfer; (C) how to reach an agent or party having
> authority to act on behalf of the new creditor; (D) the location of the place
> where transfer of ownership of the debt is recorded; and (E) any other
> relevant information regarding the new creditor.

24. Plaintiff alleges that U.S. Bank violated § 1641(g) because it failed to

provide him notice within 30 days However, "[a] borrower must bring an

action for damages based on a faulty disclosure within one year from the date

the violation occurs." Knowles v. HBSC Bank USA, No. CV–11–J–1953–S,

2012 WL 2153436, at *3 (N.D. Ala. June 8,2012) (citation omitted) (citing

15 U.S.C. § 1640(e)). A § 1641(g) claim accrues for limitations purposes not on the date of the transfer, but upon expiration of the 30-day statutory period for the requisite disclosures, such that the one-year statute of limitations period begins to run 30 days after the transfer that triggered the disclosure obligation. Squires v. BAC Home Loans Servicing, LP Civil Action No. 11–0413–WS–M, 2011 WL 5966948, at *2 (S.D. Ala. Nov. 29, 2011). Thus, plaintiff was required to file his TILA claim against U.S. Bank within one year from the expiration of the 30-day statutory period for the requisite disclosure of becoming his creditor.

25. The Magistrate Judge further states that:  MERS assigned and transferred its rights, title, and interest in the security deed to U.S. Bank on August 5, 2009, as evidenced by the assignment recorded on August 17, 2009. See [Doc. 23-2]. However, because this assignment contained a typographical error, a corrective assignment was executed on July 9, 2012, which was recorded on July 18, 2012. See [Doc. 23-3]. Even if the Court assumed that plaintiff's claim accrued at the latest on August 8, 2012, (i.e., 30 days from the ecuted corrected assignment on July 9, 2012), plaintiff did not commence this action until December 13, 2013, well over one year from the date plaintiff's claim accrued. Therefore, plaintiff's TILA disclosure claim is barred by the

applicable statute of limitations. 9 Accordingly, it is RECOMMENDED that

plaintiff's TILA claim asserted against U.S. Bank be **DISMISSED**

26.  The Magistrate judge failed to understand that because Plaintiff was not

notified of the transfer he therefore was unaware of the violation.  How then

can he bring an action on a violation that he was unaware of .

27. This notice is important so that the Borrower would know who owns both

his mortgage and note.  Should the owner becomes in default and need to

negotiate a settlement, he therefore have no doubt who would be able to

handle such request.

28. Even if Plaintiff became aware of the violation, Michael D. Bengtson of

Corporate Trust Service clearly stated that: On behalf of U.S.BANK, I am

happy to assist you with this matter to the extent I am able to provide e

information.  I have researched your mortgage and have determined that U.S.

BANK is merely the trustee for the Trust that owns your mortgage and note,

**not the trustee"**

29. However, the magistrate Judge in his order with total disregard to Plaintiff's

entered evidence (a letter from U.S. BANK) claim that U.S. BANK is the

owner of the note.

30.

31. However, Plaintiff did not receive such notice and therefore could have known to exercise his right.

32. The Act have made a provision called equitable tolling is available to stay the statute of limitations which Plaintiff argued. see [doc. 30 42].

33. Furthermore, the public records show that the assignment to U.S. BANK was from MERS, whom is referred to as a nominee, who didn't own the mortgage and note to begin with.

34. How can it assign what it didn't have?

35. Plaintiff also argues that this assignment is bogus.

36. The Truth in Lending Act ("TILA") was enacted in 1968 "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). *7 TILA provides a one-year statute of limitations period for claims of civil damages beginning "from the date on which the first regular payment of principal is due under the loan." 15 U.S.C. § 1640(e). However, equitable tolling is available to stay the statute of

limitations if the plaintiff has been prevented from discovering any potential TILA claims against defendants. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

### b. FDCPA Claim against McCurdy

37.  Plaintiff assert FDCPA Claim against McCurdy Plaintiff asserts that McCurdy violated the FDCPA by identifying U.S. Bank as the secured creditor in the two November 12, 2013, notices sent to him. See [Doc. 4 at 11 ¶¶ 45-46, 12 ¶¶ 49-50]; see also [Doc. 31 at 20 ¶¶ 60-62 (internal marks omitted) (asserting that the letter "falsely identified [U.S. Bank] [a]s the [c]reditor")]. McCurdy moves to dismiss this claim, arguing that plaintiff's assertions are belied by matters of public record. [Doc. 27 at 4-5]

38.  However, the Eleventh Circuit has recently ruled that in certain circumstances, actions taken in the course of foreclosing on a mortgage can go beyond those necessary to foreclose on the security interest and become attempts to collect on the underlying debt, therefore amounting to debt collection activity within the meaning of the FDCPA. SeeReese v. Ellis, Painter, Ratterree & Adams, LLP, 678F.3d 1211, 1217 (11th Cir. 2012) (per curiam); Bourff v. Rubin Lublin, LLC , 674 F.3d1238, 1241 (11th Cir. 2012)

(per curiam). Under these recent rulings, McCurdy's actions may implicate the FDCPA if they were an attempt not just to enforce U.S. Bank's security interest, but to collect a debt. See Rousseau v. Bank of N.Y., Civil Action No. 08-cv-00205-PAB-BNB, 2009 WL 3162153, at *8 (D. Colo. Sept. 29, 2009) (citations omitted) (recognizing that even when a security interest is involved, "where there is some attempt to collect money in addition to the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to the money collection"); see also Reese, 678 F.3d at 1217-28 (finding a communication can have dual purposes even where a law firm intended the letter and documents sent to debtor to give notice of foreclosure where they also demanded payment on the underlying debt); Bourff, 674 F.3d at 1241; Beadle, 2005 WL 300060, at *3. Assuming, without deciding, that the November 12, 2013, notices constitute "debt collection activity" under the FDCPA, plaintiff has still failed to adequately allege that McCurdy engaged in any acts prohibited by the FDCPA. Plaintiff alleges that McCurdy violated the FDCPA by sending the notices because the notices were false and misleading communications sent in an attempt to collect a debt that falsely identified U.S. Bank as the secured creditor. Under § 1692e of the FDCPA, a debt collector is prohibited from using "any false, deceptive, or misleading representation or

means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Similarly, § 1692f prohibits a debt collector from using any "unfair or

unconscionable means to collect. . . any debt." 15 U.S.C. §1692f. Plaintiff

appears to allege that identifying U.S. Bank as "the secured creditor" in the

notices violates both of these provisions because it is a false representation

unconscionably used to collect a debt from plaintiff. See generally [Doc. 4 at

16 ¶ 63]. However, the representation that U.S. Bank was the secured creditor

does not amount to a false,deceptive, or misleading representation based on the

pleadings and propertyrecords before the Court. Indeed, the assignment to U.S.

Bank was executed on August 5, 2009, recorded on August 17, 2009, and

corrected on July 9, 2012, whichwas also recorded on July 18, 2012, see

[Docs. 23-2 & 23-3], prior to plaintiff receiving the communications

fromMcCurdy on November 12, 2013, see [Doc. 4 at6 ¶¶ 23-24, 7 ¶¶ 27-28].

Accordingly, U.S. Bank was the secured creditor of themortgage, as stated in

the November 12, 2013, notices, and based on the allegationsof plaintiff's

amended complaint and the property records before the Court, the undersigned

finds that the statement in these notices that U.S. Bank was a secured creditor

cannot serve as the basis for plaintiff's claim that McCurdy used a false,

deceptive, or misleading representation or unfair or unconscionable means to

collect a debt under the FDCPA, see 15 U.S.C. §§1692e,1692f. Thus, it is hereby RECOMMENDED that plaintiff's FDCPA claim asserted against McCurdy be **DISMISSED**

39. PLAINTIFF received a letter from MCCURDY & CANDLER stating that "THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

40. This letter, which dated November 20, 2013, further states that "Nationstar Mortgage, LLC acts as the mortgage loan servicer for the investor that owns your loan. (That investor to date have not been identify) The investor has authorized Nationstar Mortgage, LLC to provide this information and to act on its behalf.

41. A demand for payoff was offered of the amount of $326,670 to MCCURDY & CANDLER, LLC to be sent to their office.

42. Plaintiff demanded an explanation for the payoff amount, whom entitled to that payoff? How this the investors/ owner(s) arrived to that amount? Only a partial list of junk fees and misc posting were sent to PLAINTIFF, which did not explain any of questions asked.

43. Clearly, if MCCURDY & CANDLER was not a debt collector, they were acting as one.  Furthermore, not identifying who the Investor(s) are for whom MCCURDY  & CANDLER is demanding payment for, is consider as tortuous interference.

44. PLAINTIFF further alleged that MCCURDY & CANDLER has misrepresent the amount and character of the debt, among other things.

45.  Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, which includes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," id. § 1692e(10).

46. MCCURDY & CANDLER was not collecting his own debt when they claim that they were acting as a debt collector.  Therefore, MCCURDY & CANDLER is not a creditor.  The statute defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." Id. § 1692a(4). And "[t]he FDCPA provides that 'any debt collector who fails to comply with any

provision of this subchapter with respect to any person is liable to such person' for [actual and statutory] damages and costs." Bourff v. Lublin, __ F.3d __, slip op. at 6, No. 10-14618 (11th Cir. Mar. 15, 2012) (quoting 15 U.S.C. § 1692k(a)).

47. Federal debt collection laws not only regulate the collection conduct of traditional collection agencies but attorneys and, in some circumstances, loan servicers. In the name of thin profit margins, the current mortgage foreclosure crisis has pushed many loan servicers and bank attorneys to the limits of these consumer protection laws. Those found to have violated debt collection laws may be liable to the borrower for $1,000.00 in statutory damages as well as actual damages including attorneys' fees and costs.

48. Loan servicers, their customer service representatives, loan modification agents, foreclosure lawyers and their staff have all been accused of heavy handed abusive and misleading debt collection tactics. What recourse do victimized borrowers have under federal law?

49. The vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." These finding may be particularly true when the debt sought to

be collected is based on a residential home loan. The Act regulates the conduct of "debt collectors" in collecting "debts" owed or allegedly owed by "consumers." It is designed to protect consumers from unscrupulous debt collectors, whether or not there is a valid debt.

50. The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct the natural consequence of which is to harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information with regard to their rights as a consumer.

51. A single violation is sufficient to support judgment for the consumer.

52. "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." **Residential mortgage loans are, when in default, covered by this definition.**

53. Liability under the FDCPA for mortgage servicers initially turns on whether or not the entity attempting to collect the debt is a "debt collector" as defined by the Act. The answer to this inquiry depends on when the mortgage

servicer acquires the loan as the Act includes an exemption to the new servicer.

54. The FDCPA includes a rather lengthy list of all those who are not "debt collectors". The Act specifically states that the term does not include a "debt which was originated by such person; [or] concerns a debt which was not in default at the time it was obtained by such person".

55. Because the FDCPA does not apply to a creditor collecting its own debt, to understand the extent of this exclusion, the above language must be read together with the Act's definition of "creditor" found in 15 U.S.C. §1692(a)(4). A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . The term does not include– (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor; . . . [and] (F) any person collecting or attempting to collect any debt owed or due or asserted to

be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." Read together and as confirmed in the Act's legislative history, Congress' intent is clear, the exemption is intended to include "mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing."

56.  This scenario is often the case when an assignment is made from one servicer to another. Thus, for FDCPA purposes, the distinction between a "loan servicer" and a "debt collector" depends on whether the loan was in "default" at the time it was obtained.

57.  Plaintiff became in default on or about December, 2007 and according to the records that was entered by MCCURDY & CANDLER, LLC as evidence.

58.  Shortly after, the loan was accelerated.  However, additional fee have been continued to piled up event to this day.

59.  The term "**default**" raises a number of issues. The Federal Trade Commission ("FTC") (which is charged under the Act with regulatory enforcement and oversight) made clear in its often cited DeMayo opinion that

the word **"default"** was to be defined by examining first, the underlying

contract; followed by the applicable state or federal law; and finally the

creditor's reasonable written guidelines. The standard residential loan note

for Fannie Mae and Freddie Mac (who together hold or guarantee over $5.4

trillion of mortgages, about half of the nation's home loans ) defines a loan

as being in default if not paid on the due date (i.e., first of the month).

60.  Under this dynamic, when determining a borrower's rights under the

FDCPA, it should first be determined when the loan came into to default and

when the assignment to the loan servicer was made.

61.  In the current environment of loan securitization, this is often a complicated

task, sometimes without any clear answer.  However, a trip to the county

clerk to examine the chain of title helped the PLAINTIFF clarify some

things.

62.  If the borrower is already in foreclosure in this case, this analysis is even

more vital.  It is often the case that assignments (or corrective assignments)

are made from one servicer to another weeks and even days before the

foreclosure is filed.

63.  While the loan servicer may not be subject to FDCPA liability, their

attorneys are. Originally excluded from the definition of "debt collector", in

1986, Congress removed the attorney exemption. The legislative history of the amendment concludes that attorneys were suffering from the same infirmities as their collection agencies colleagues. Their collection activities were not being effectively monitored and so the removal of the exemption was necessary to "put a stop to the abusive and harassing tactics of attorney debt collectors."

64.   In its seminal case of Heintz v. Jenkins, the United States Supreme Court held that litigation conduct of attorneys in collecting consumer debts is **not** exempt from the FDCPA.  Foreclosure attorneys are generally subject to the FDCPA to the extent they attempt to collect money or enforce personal liability.

65.   However, in non-judicial jurisdictions where foreclosures are performed out of court by trustees for the bank, FDCPA liability has been elusive. The non-judicial jurisdiction circuits are split on this issue, some holding that the trustees are debt collectors and others holding that they are not.   Distinctions are often made based upon the activities of the trustee.  Is the trustee simply enforcing a security interest or collecting a debt?

66.   In this case, Plaintiff unsure who the real Trustee is.

**IV.    The FDCPA does encompass an attorney performing a foreclosure.**

67.  The Fourth Circuit in Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373

(4thCirc. 2006) clarified that a foreclosure firm is attempting to collect a

debt, even though the foreclosure file was in rem and they were attempting to

foreclose on a deed of trust. The debtor filed suit against the law firm that had

filed the foreclosure action alleging several violations of the FDCPA.

Specifically the debtor alleged that the law firm failed to verify the debt, even

though she had requested verification in writing; the law firm continued its

collection efforts even though the debt had been contested and that the firm

communicated with the debtor even though she was represented by

counsel. Id. at 375.

68.  The law firm, in his first/ premature motion to dismiss arguing that it was

not acting in connection with a "debt" and that it was not a "debt collector"

within the definition of the statute. Id. Specifically, the law firm argued that it

was a substitute trustee for a deed of trust and that it was acting at the trustee,

therefore, it was not a "debt collector". However, the Fourth Circuit ruled

that the law firm was attempting to collect a debt and that it did fall under the

definition of a debt collector. Specifically, the Court stated that "[s]ince a

foreclosure is a method of collecting a debt by acquiring and selling secured

property to satisfy a debt, those who engage in such foreclosures are included

within the definition of debt collectors if they otherwise fit the statutory definition." Id. at 379, *citing* Shapiro & Meinhold v. Zartman, 823 P.2d 120 (Colo. 1992). Further, the Court stated that while not every law firm filing foreclosure actions may fall under the FDCPA, it is well-established that the Act applies to Lawyers "who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Id. at 379, *citing* Heintz v. Jenkins, 514 U.S. 291, 115 S.Ct. 1489 (1995).

69. While this decision simply clarifies a split within the Fourth Circuit, it is the overwhelmingly majority view throughout the Circuits and it is the most recent decision to discuss how a law firm performing foreclosures should consider itself to be a debt collector.

## V.   <u>COMMUNICATION WITH THE DEBTOR</u>

70. The initial communication with the debtor must include a notice that it is from a debt collector attempting to collect a debt. Generally, this warning, or "mini-Miranda" is listed at the beginning of any letter demanding the debt, any pleading that is sent, and any other document that is mailed to the debtor. It must be placed conspicuously on the document and be written in such a way so as the "least sophisticated consumer" would understand it. It also must state that they are entitled to dispute the debt and that they must do so in

writing within thirty (30) days of receipt of the document. Normally, the

mini-Miranda will state the following:

> **THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. UNLESS YOU, WITHIN 30 DAYS AFTER RECEIPT OF THIS DOCUMENT, DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, THIS FIRM WILL ASSUME THAT THE DEBT IS VALID. IF YOU NOTIFY ME IN WRITING WITHIN THE ABOVE 30 DAY PERIOD, THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, I WILL OBTAIN VERIFICATION OF THE DEBT AND A COPY OF SUCH VERIFICATION WILL BE MAILED TO YOU BY THIS FIRM. IF YOU SO REQUEST WITHIN THE ABOVE 30 DAY PERIOD, THIS FIRM WILL INFORM YOU OF THE IDENTITY OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.**

71.  Any subsequent communication with the debtor should also include a

statement to the effect that "This Communication is from a Debt Collector"

or "This Communication is from a Debt Collector and any information you

provide can be used for the purpose of collecting that debt." This is provided

mainly because the debt collector does not know when and if the consumer

has received the prior communication. So it is always better to play it safe.

## VI. <u>THE FDCPA IMPOSES A STRICT LIABILITY STANDARD</u>

72. The FDCPA, 15 U.S.C. § 1692, et seq., is a strict liability statute, Taylor v.

Perrin, Landry deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997): see also

Irwin v. Mascott, 112 F. Supp. 2d 937 (N.D. Cal. 2000): Pittman v. J.J. Mac Intyre Co. of Nevada, Inc., 969 F. Supp. 609 (D. Nev. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F. 3d 30, 33-34 (2nd Cir. 1996).

73. The FDCPA is a remedial statute.  Hamilton v. United Healthcare of Louisiana, Inc., 310 F. 3d 385, 392 (5th Cir. 2002). The remedial nature of the FDCPA requires that courts interpret it liberally. Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162, 1176 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107, 1117 (20th Cir. 2002).

## VII.   DEENDANTS FALSELY IDENTIFIED U.S. BANK AS THE CREDITOR/ OWNER

74.  On or about November 15, 2013, Plaintiff receive a letter Titled "NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. 1692 INITIAL COMMUNICATION LETTER" in the mail address from Defendant McCurdy & Candler, LLC.

75. The notice was dated November 12, 2013 stated that "This law firm represents U.S. Bank, National Association, as Trustee for The Holders of

The Specialty Underwriting and Residential Finance Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-AB1." The letter was not signed by anyone.

76. This letter falsely identified "U.S. Bank, National Association, as Trustee for The Holders of The Specialty Underwriting and Residential Finance Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-AB1." As the Creditor.

77. Plaintiff was mislead thinking he can negotiate a principal reduction with the secure creditor whom he believe to be US BANK.

78. MCCURDY & CANDLER, LLC violated the FDCPA's "prohibition on false, deceptive or misleading representations by falsely stating in its collection notice that US BANK was the 'creditor' of the PLAINTIFF'S loan.

79. Defendant U.S. BANK, whom McCURDY & CANDLER claimed to be the Secure Creditor/ Owner of the note, has said in a letter dated October 7th, 2013 responding to the Plaintiff' request to settle any and all debt owe (**see attached exhibit "A"**) and said:

   a. **U.S. BANK is merely the trustee for the Trust that owns your mortgage and note.**
   b. **The Trust is the owner of the mortgage and note.**

    **c. Please note that the Trust is the owner of your mortgage and note, not the trustee.**

    **d. It is the servicer who has taken all action regarding your property.**

80.  What PLAINTIFF found as the basis of the foreclosure are loan documents that were paid in full. In cash and none of the parties on the initial originals retained any beneficial ownership interest at all.

81.  Such deceptive processes violate state and Attorney Generals have requested suspension of questionable foreclosures and investigation into the underlying cases in which judges and courts throughout the country have not yet confirmed:

    a.  That all foreclosure-related documents were lawfully signed,

    b.  That the chain of ownership is clear and has been revealed in full

    c.  That state consumer protection requirements have been followed and have been processed according to state law.

82.  Georgia state Attorney General (AG) Sam Olens joined a $25 billion Federal-Atate Settlement with Nation's Five Largest, Mortgage Servicers.[3]

83.  **First ever nationwide reforms to servicing standards.** These servicing standards require a single point of contact for borrowers' ease in

---

[3] http://law.ga.gov/press-releases/2012-02-09/attorney-general-sam-olens-joins-25-billion-federal-state-settlement

communicating with servicers, adequate staffing levels and training, better communication with borrowers, appropriate standards for executing documents in foreclosure cases, and ending improper fees. Specifically:

a. Borrowers must be thoroughly evaluated for all available loss mitigation options before foreclosure referral, and banks must act on loss mitigation applications before referring loans to foreclosure; i.e. "dual tracking" will be restricted.

b. Borrowers must be sent a pre-foreclosure notice that will include a summary of loss mitigation options offered, an account summary, description of facts supporting lender's right to foreclose, and a notice that the borrower may request a copy of the loan note and the identity of the investor holding the loan.

c. Information in foreclosure affidavits must be personally reviewed and based on competent evidence.

d. Holders of loans and their legal standing to foreclose must be documented and disclosed to borrowers.

e. Servicers are required to expedite and facilitate short sales of distressed properties.

84. One of the mortgage servicers which have joined the settlement is Bank of America Home Loan (who is not a party to this lawsuit) who has admitted to have sent incorrect account information and claimed to have corrected it on a letter sent on January 17, 2011.

85. On February 22, 2008 Wilshire Credit Corporation claimed to have corrected Erroneous information which was being reported to PLAINTIFF'S consumer credit report.  However, there are no evidence before the court to prove that these corrections were made and that MCCURDY & CANDLER is not misrepresenting the amount and the character of the debt.

86. PLAINTIFF is unsure what role MCCURDY & CANDLER played in the attempt to foreclose.

87. PLAINTIFF is unsure who MCCURDY represent at this time.

88. PLAINTIFF'S research and information also indicated that his loan did not make it in the trust by the closing date and also report to the SEC ended in January, 2008.

## VIII. <u>THE RECORDED SECURITY DEED</u>

89. Public records show that the mortgage loan at issue was transferred to US BANK on August 5, 2009.

90. PLAINTIFF filed a notary complaint on July 19, 2012 after he inspects the public record and realizes the assignment to US BANK was fraudulently recorded [4]. US BANK was copied on this communication **See exhibit"B"**

91. The assignment which is recorded on August 5th 2009 at the Clerk Superior Court Gwinnett County, GA with a loan #4535088 (Differs from Note and Security Deed) read record and return: MCCURDY & CANDLER, LLC, attn: GA Foreclosure Department, 250 E Ponce De Leon Avenue Suite 600, Decatur, GA 30030.

92. The PLAINTIFF requested that the Secretary of State of the State of Oregon and the Attorney General of the State of Oregon investigate the possible notary violation and possible criminal actions of Oregon Notary Public **Shelby Tisdale**, Commission No. 409809.

93. Plaintiff asserts that the document was false and/or forged and has been unlawfully filed into a public office in the State of Georgia, Gwinnett County in violation of Georgia and Oregon Codes.

94. Melissa Tomlin, Assistant signed as assistant secretary. Lori Umberger, signed as the first witness. Justin Burns signed as the second witness.

---

[4] The assignment was recorded under the wrong name and it contained robo-signners. It was to returned to MCCURDY & CANDLER, LLC. AT 250 E. Ponce De Leon Avenue, Suite 600, Decatur, GA 30030. However, the Notary was in the state of Oregon.

95.  A search for Melisa Tomlin turns up a number of recorded documents of title where Ms. Tomlin appears in alternate employment position, further adding to my conclusion that this assignment is invalid and cannot be submitted as evidence in the court.

96.  In fact, Defendant MCCURDY & CANDLER did not enter this document as evidence in his renewed MOTION TO DISMISSED.

97.  Almost immediately after the notary complaint was filed, a corrective assignment of security deed was filed into the State of Georgia, Gwinnett County Court.  It states that the reason for the corrective of assignment was to correct the name of the Assignee.   The words "for the holder of" were added.  However, the **robo-signer's** names were removed and also a fake address of US BANK was added which was traced back to the address of PLAINTIFF'S previous servicer, BANK OF AMERICA.

98.  The correction assignment stated that "**U.S. Bank, National Association, as Trustee for The Holders of The Specialty Underwriting and Residential Finance Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-AB1** (hereinafter referred to as "Assignee") whose address is 7105 Corporate Drive Plano, TX 75024.

99. A short Google of this new address revealed that this address belong to BANK OF AMERICA, a previous servicer of the PLAINTIFF.

100. PLAINTIFF'S research and information has indicated that the sworn SEC filings for SURF 2007-AB1 trust clearly delineate where the current most recent properly endorsed and assigned Note and Deed of Trust originals are attested to be held. Yet no mention of this fact is found on this record.

101. It appears that the previous loan servicer BAC Home Loans Servicing ("BAC") wholly owned subsidiary of Bank of America has created a delivery receipt mechanism whereby correspondence by an for SURF 2007-AB1 was being sent and respondent to by BAC and their representative; not those of SURF 2007-AB1.

102. These assignments are false and PLAINTIFF will have to depose the parties involved in order to factually state the correct date in which the proper assignment was properly filed, if any proper assignment was filed at all.

103. PLAINTIFF alleged that the DEFENDANT'S have filed false and fraudulent information in the court in attempt to foreclose on PLAINTIFF'S property.

## VIII.  Challenging the assignment

104.    Plaintiff asserts that the statement that U.S. Bank was the secured

creditor in the notice was misleading because U.S. Bank expressly advised

him in a letter that it was merely the trustee for the Trust that owns the

mortgage and note, and he therefore contends that U.S. Bank could not be the

secured creditor. See [Doc. 25 at 6 ¶ 16]; see also [Doc. 4 at 31]. However, as

trustee, U.S. Bank, by way of the assignments, "holds legal title to the

mortgages and notes for the benefit of [the Trust]" and therefore was the

"holder of the mortgage," King v. Ocwen, No. 07–11359, 2009 WL 724062,

at *4 (E.D. Mich. Mar. 18, 2009), adopted a *1, and "[t]rustees of deeds of

trust are likewise treated like creditors under the FDCPA," Bever v.

CitiMortgage, Inc., No. 1:11–cv–01584–AWI–SKO, 2014 WL 1577250, at

*15 (E.D. Cal. Apr. 18, 2014) (citation omitted). Therefore, plaintiff'

contention is without merit.

> "Section 2.01, subsection 1 of the PSA requires that transfer and assignment
> of mortgages must be effected by hand delivery, for deposit with the Trustee
> with the original note endorsed in blank."
> "Section 2.05 of the PSA requires that the Depositor transfer all right, title,
> interest in the mortgages to the Trustee, on behalf of the trust, as of the
> Closing Date."

105.    "Under New York Trust Law, every sale, conveyance or other act of

the trust on contravention of the trust is void. EPTL §7-2.4. Therefore, the

acceptance of the note and mortgage by the trustee after the date the trust

closed would be void."

106.      As Stated by Defendant U.S. BANK,  "Please note that the Trust is

the owner of your mortgage and note, not the trustee." **See exhibit "C"** of

Plaintiff's original complaint.

107.      Section 2.01 of the PSA requires that the Depositor deliver to and

deposit the original note, mortgage and assignments to the Trustee.

108.      It the assignment of the Plaintiff's note and mortgage, **have not been**

**assigned from the Depositor to the Trust, will therefore be void as in**

**being in contravention of the PSA**. *Wells Fargo Bank, N.A. v. Erobobo* of

*Supreme Court Kings County NY.*

109.      Discussion on Saldivar's standing to challenge the validity of the

assignment stating "'A third party generally lacks standing to challenge the

validity of an assignment.' *Bank of American Nat'l Assoc. v. Bassman FBT,*

*L.L.C., et al.,* 981 N.E.2d 1, 7 (Ill. App. Ct. 2012)." *Ibid*

110.       It then considers whether the Trustee's acts in contravention to the

PSA, and  NY EPTL 7-2.4, are *ultra vires*, and merely *voidable*, but not ***void***

***ab initio***.

111.     Finally the _Saldivar_ Court states, "Based on the _Erobobo_ decision

and the plain language of N.Y. Est. Powers & Trusts Law § 7-2.4, the Court

finds that under New York law, assignment of the Saldivars' Note after the

start up day is void ab initio. As such, none of the Saldivars' claims will be

dismissed for lack of standing." _In Re Saldivar_, Case No: 11-10689.

112.     **"We conclude that a borrower may challenge the securitized**

**trust's chain of ownership by alleging the attempts to transfer the deed**

**of trust to the securitized trust (which was formed under New York law)**

**occurred after the trust's closing date.  Transfers that violate the terms**

**of the trust instrument are void under New York trust law, and**

**borrowers have standing to challenge void assignments of**

**their loans even though they are not a party to, or a third party**

**beneficiary of, the assignment agreement."** _Glaski v. Bank of America,_

_National Association_, F064556.

113.     In footnote 6, the court states, "Because the trial court took judicial

notice of the existence and recordation of the assignment earlier in the

litigation, we too will consider the assignment, but will not presume the

matters stated therein are true. (See pt. IV.B, post.) For instance, we will not

assume that JP Morgan actually held any interests that it could assign to

LaSalle Bank. (See *Herrera v. Deutsche Bank National Trust Co*. (2011) 196 Cal.App.4th 1366, 1375 [taking judicial notice of a recorded assignment does not establish assignee's ownership of deed of trust].)" *ibid*

114.     Here the *Glaski* court is unwilling to extend a presumption of good faith in respect of the validity or veracity of the recorded document.

115.     The Court further state, "**Despite the foregoing cases, we will join those courts that have read the New York statute literally**. We recognize that a literal reading and application of the statute may not always be appropriate because, in some contexts, a literal reading might defeat the statutory purpose by harming, rather than protecting, the beneficiaries of the trust. In this case, however, we believe APPLYING the statute to void the attempted transfer is justified because it protects the beneficiaries of the WaMu Securitized Trust from the potential adverse tax consequence of the trust losing its status as a REMIC trust under the Internal Revenue Code. Because the literal interpretation furthers the statutory purpose, we join the position stated by a New York court approximately two months ago:"

116.     Here, in these cases, the homeowners were allowed to challenge the invalidity of the assignment, or substitution of trustee, or conveyance.

117.     Plaintiff's loan has been securitized into a mortgage backed security trust.  The PSA is the document that expresses the duties authorities, and limits and disabilities of the trustee.

118.     A borrower generally lacks standing to challenge the assignment. *Id. at 736.* **However, a borrower may RAISE a defense to an assignment that would render it "absolutely invalid," that is, void.** Id. at 735-36; *Tri-Cities Construction, Inc. v. American National Insurance Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975)

## IX.   CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests that this Court would reconsider the MAGISTRATE JUDGE'S FINAL REPORT, RECOMMENDATION, AND ORDER and allowing Plaintiff the opportunity amend his complaint.

Dated: October 7th, 2014

Respectfully submitted,

Ken Joseph
596 Middleton Place,
Grayson, GA 30017
443-831-8884
Sem252525@aol.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the document above will be sent by first class mail USPS to counsel of record listed below for Defendants.

McCurdy & Candler, LLC
Six Piedmont Center, Suite 700
3525 Piedmont Road, NE
Atlanta, GA 30305

U.S. BANK NATIONAL ASSOCIATION
c/o
BALCH & BINGHAM, LLP
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, GA 30308
Telephone: (404) 261-6020

Dated:  October 7th, 2014

_____
Ken Joseph
596 Middleton Place
Grayson, GA 30017
Phone: 443-831-8884
Email: sem252525@aol.com